```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :
        Plaintiff               :
                                :
                                :
        v.                      :   CRIMINAL NO. 1:CR-05-278
                                :
                                :
TYRONE JONES,                   :
        Defendants              :
```

M E M O R A N D U M

We are considering Defendant's motions to suppress evidence. (Docs. 27, 35, 46).  On October 25, 2005, we held a hearing to determine whether evidence seized from, and statements made by, the Defendant should be suppressed because the police made an invalid warrantless entry into his residence and subsequently obtained and relied upon a facially invalid search warrant to search that residence.  At the hearing, the Government presented the testimony of Detective Sean Cornick, Detective Shawki Lacey, and Drug Enforcement Administration (DEA) Agent Keith Kierzkowski.  The Defendant did not present any testimony.

On June 14, 2005, Agent Kierzkowski informed Detective Cornick that he had a confidential informant (CI) who could facilitate a drug transaction with an individual known as "Roni."  As a result of this information, a meeting was set up between Roni and the CI so that the CI could purchase three ounces and an "8-ball" of crack cocaine.  The CI would be accompanied to the

meeting by Detective Lacey, who was acting in an undercover capacity.

According to Detective Lacey, the CI was searched for contraband and money prior to the meeting.  Although the pre-arranged purchase was for approximately $2500.00 worth of crack cocaine, the CI was not given any money to complete the transaction.  Instead, the plan was to arrest Roni once it was confirmed that he possessed the drugs.

Detective Lacey and the CI drove to Sixth and McClay Streets in Harrisburg.  Once there, the CI called Roni and was told to proceed to the area of Fifth and Woodbine Streets.  After a second call to Roni the CI saw him walking north on Fifth Street.  The CI exited the vehicle, following Roni to a nearby alley.  Detective Lacey remained in the vehicle and could see the CI and Roni until they went into the alley.  He then moved the vehicle so that he could maintain visual contact.  At no time could he hear the conversation between the CI and Roni.

Detective Lacey witnessed the CI and Roni converse for approximately thirty seconds before the CI returned to the vehicle. He informed Detective Lacey that Roni had a large quantity of crack with him but that Roni was nervous, asked about the police because he had seen people in cars, and wanted to go to a different location.  The CI asked Detective Lacey to drive off to divert suspicion and he did so.  Eventually, DEA agents told Lacey where to find the CI.  Once Detective Lacey picked him up,

the CI reaffirmed that Roni had shown him the crack cocaine. Detective Lacey relayed all of this information to Detective Cornick.  At no time, however, did Detective Lacey see any drugs.

After Roni left the alley, Detective Cornick, having been informed by Detective Lacey of Roni's reluctance to complete the transaction, ordered the other officers in the area to continue surveillance.  Detective Hooper radioed Cornick that Roni entered 2212 North Fourth Street.  Detective Cornick ordered that a perimeter be established around the house.  This perimeter included Orange Alley, which ran along the back of the residence. Once the perimeter was established, Detective Cornick, wearing a marked police jersey and accompanied by officers in full police uniform, approached the residence and knocked on the front door, announcing that they were the police.  Detective Cornick could see through the glass door that two females and a child were in the residence.

While he was knocking on the door, Detective Cornick received a radio transmission from Officer Mauer, who was located at the rear of the residence, that a black male was throwing things from the roof of the residence.  Detective Cornick continued to knock on the door and announce the presence of the police.  He then received a second transmission from Officer Mauer which indicated that the individual had thrown crack cocaine and a handgun from the roof.  At this point, Detective Cornick and the other officers made a forced entry into the residence and

performed a protective sweep.  They secured the first floor and then continued to the second floor where they found the two females and the child.  Detective Cornick found the Defendant on the third floor.  All of the individuals were then taken to the living room where Cornick informed them that he would be obtaining a search warrant for the residence.  During the course of the sweep, crack cocaine and marijuana were seen in the bathroom toilet but they were not removed.

Detective Cornick obtained the warrant at 11:17pm on June 14, 2005.  He returned to the residence where he advised the occupants of the contents of the warrant and gave them their *Miranda* warnings.  A search was then conducted in which quantities of marijuana, crack cocaine, powdered cocaine, and other items were found.  To Detective Cornick's knowledge, no search, other than the protective sweep, was done prior to the issuance of the search warrant.

According to Agent Kierzkowski's testimony, prior to securing the occupants he had positioned himself in the alley behind the residence.  He was accompanied by a number of other officers, including Officer Mauer.  Almost immediately an object, which he later determined to be loaded gun, flew by his head.  He also saw a chalk-like substance hit the ground.  He picked it up and, based on his experience, identified it as crack cocaine.  From a distance of about fifty to sixty feet, in adequate lighting, he observed the Defendant throwing bags and other items

from the roof. He instructed Officer Mauer to relay this information to Detective Cornick.

Agent Kierzkowski then entered the residence. He read the Defendant his *Miranda* warnings but asked no questions. The Defendant told him, however, that all of the drugs in the house were his and did not belong to the other occupants. The Defendant also made this statement, along with other statements, to Detective Cornick.

With regard to the warrant, the application was made on June 14, 2005, and the affidavit in support of the warrant was dated June 14, 2005. However, the body of the affidavit indicates that June 15, 2005, was the date of occurrence for the events supporting probable cause. Detective Cornick testified that this was a typographical error and that although he had read over the affidavit, he had not noticed it. Further, although the house to be searched was identified as 2212 North Fourth Street, the inventory receipt from the search indicates that a copy of the receipt, warrant, and affidavit were left at 2214 North Fourth Street. Detective Cornick testified that he wrote "2214" but that this was an error and that it should have been "2212."

The Defendant argues that the items thrown from the roof of the residence should be suppressed because the circumstances in which they were thrown constitute a forced abandonment. This argument, however, is dependant upon a showing that the items were thrown from the roof *after* the police entered the residence. He

further argues that all items seized should be suppressed because the warrantless entry was unlawful and as such, any resulting search was unlawful.  The Government maintains that the Defendant's forcible abandonment argument must fail because the officers entered the residence after the Defendant began to throw items from the roof.  The United States further argues that no search, other than a protective sweep, was done until a search warrant was obtained and that the officers had probable cause and exigent circumstances before entering the house.

The Defendant's forcible abandonment argument must fail. The abandonment of property "is not voluntary if it is the result of a preceding Fourth Amendment violation or other illegal police conduct."  *United States v. Perkins*, 871 F.Supp. 801, 803 (M.D.Pa 1995)(McClure, J.).  The only argument that the Defendant offers to support his theory is that the items were thrown from the roof after the officers entered the house.  However, Detective Cornick testified that he entered the house after Officer Mauer informed him that a gun and drugs were thrown from the roof.  We find this testimony to be credible.  *United States v. Scarfo*, 180 F.Supp.2d 572, 576 (D.N.J. 2001)(stating that issues of credibility and weight given to evidence are to be decided by the trial judge at a suppression hearing).  As such, the gun and drugs thrown from the building could not have been forcibly abandoned as a result of the entry and we cannot grant suppression on that basis.

The Defendant also contends that the forced entry was unlawful. However, once Detective Cornick was informed that items were being thrown from the roof, probable cause existed to enter the residence. *See United States v. Acosta*, 786 F.Supp. 494, 500 (E.D.Pa. 1992)(finding that probable cause existed once the agent at the front door of the apartment was informed that "stuff," which was interpreted to mean cocaine, was being thrown from the window of the apartment), *rev'd on other grounds* 965 F.2d 1248 (3d Cir. 1992). In order for the entry to be lawful, exigent circumstances must also have existed.

When officers possess "probable cause to believe contraband is present" and are also faced with circumstances where "they reasonably conclude that the evidence will be destroyed or removed before they can secure a warrant, a warrantless search is justified." *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir. 1973). In determining whether the circumstances surrounding the warrantless entry and search are exigent, courts have looked to:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant: ...(2) reasonable belief that the contraband is about to be removed; ...(3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; ...(4) information indicating the possessors of the contraband are aware that the police are on their trail; ...and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.

*Id*. at 268-9 (internal citations and quotations omitted).

7

In the instant case, the evidence shows that the Defendant was nervous while speaking with the CI and asked the CI about possible police presence.  Once the Defendant returned to his residence, he disposed of contraband and a firearm by throwing them off the roof of his house.  He continued to dispose of items from the roof even though there were officers in the alley behind the house and at the door of his residence.  As such, we find that the officers who entered the house possessed a reasonable belief that contraband was being removed and a reasonable belief that the Defendant knew that the police had followed him and were at his residence.  We further find that there was sufficient urgency as the officers were aware that the Defendant was actively removing drugs and other items from the residence.  While there is no evidence that the officers attempted to obtain a search warrant prior to entering the residence, under the circumstances of this case, the officers could have reasonably "concluded that even a short wait might have been too long." *Id*. at 269-70.  Finally, although the officers entered the house and made a protective sweep, a search warrant was obtained prior to any search for contraband in the residence.  Taking all of these factors into consideration, we conclude that sufficient exigent circumstances existed to justify the warrantless entry into the residence.

The Defendant's next argument is that the search warrant was facially invalid and supported by an obviously false affidavit.  He also argues that the warrant is an invalid general

warrant.  The Government responds by contending that the discrepancy between the dates in the affidavit and the warrant are a typographical error which amount to a technical defect.  The United States does not address the Defendant's contention that the warrant is an invalid general warrant.

"An affidavit which contains unwise, poorly crafted or otherwise defective statements may nevertheless support a valid warrant."  *United States v. Conley*, 4 F.3d 1200, 1208 (3d Cir. 1993).  "[S]tatements in an affidavit may not be read in isolation - the affidavit must be read as a whole."  *Id*.  In this instance, the affidavit contained sufficient information to support a finding of probable cause.  The affidavit contained not only information regarding the meeting between "Roni" and the CI, but that a gun and crack cocaine were found at the rear of the house and that "Roni" was seen throwing items from the roof of the residence that he entered.  (Gov. Ex. 2).  We find the testimony of Detective Cornick, that the presence of the date "6-15-2005" in the affidavit was a typographical error, to be credible.  Since the affidavit contained sufficient probable cause to support the warrant application, we cannot suppress the evidence on this ground.  We further note that the Defendant's reliance on *Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1234, 157 L.Ed.2d 1068 (2004), to support his argument that the error in the date is more than a "technical defect" is misplaced.  In *Groh*, the Supreme Court found that a warrant devoid of any description of the items to be seized

was invalid. *Groh*, 540 U.S. at 564-6, 124 S.Ct. at 1294-5, 157 L.Ed.2d at 1082-4. An error in a supporting affidavit is clearly not the same as the failure to include a description of items to be seized.

The Defendant maintains that the warrant is an invalid general warrant. He does so by parsing the language used in the search warrant. However, "the phrases in a search warrant must be read in context and not in isolation." *Conley*, 4 F.3d at 1208. The warrant in this case authorized a search for "Any Contraband, including but not limited to Cocaine or any controlled substance, any Drug Paraphernalia, Drug Proceeds, and also any firearms indicative of ownership." (Gov. Ex. 1). The Defendant contends that the use of the word "contraband" leaves an officer with unbridled discretion. However, it is clear from the remainder of the warrant that the contraband being sought was drugs or other drug-related items. Additionally, the phrase "indicative of ownership" in not confusing as it is clearly referring to any firearms that the police may find.

The Defendant's final argument with regard to the entry into the residence is that since the police failed to announce both their identity and purpose prior to entering the Defendant's residence, the entry was unlawful. At the suppression hearing, Detective Cornick testified that when he knocked on the door of the Defendant's residence, he announced that the police were present. There was no testimony, however, as to whether he

10

announced their purpose. Thus, assuming that he did not announce their purpose, it is up to the Government to demonstrate that exigent circumstances existed to justify a failure of the officers to announce their purpose prior to entering the residence. *United State v. Conley*, 859 F.Supp. 887, 890 (W.D.Pa. 1994)(*Conley II*). We have already determined that the officers' entry into the house was supported by exigent circumstances. When Detective Cornick initially knocked on the door he did not know that items were being thrown from the roof of the house. After he became aware of the probable cause that existed to enter the house, it was reasonable for Detective Cornick to believe that the Defendant knew of the police presence, and its purpose, and was trying to destroy evidence. *Id*. at 891. Thus, Detective Cornick's failure to announce their purpose prior to entering the residence did not make the entry unlawful.

The Defendant also argues that any statements he made should be suppressed because since the entry and search of the residence were unlawful, any statements made are "fruit of the poisonous tree." The Government argues that since both the entry and search were lawful, the statements cannot be suppressed under this theory. Having found that both the entry and search were lawful, we must agree with the United States and will not suppress the statments. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct 407, 9 L.Ed.2d 441 (1963)(finding that statements can be

11

suppressed if they are the "fruit" of an officer's unlawful action).

        We will enter an appropriate order.

                                            <u>/s/William W. Caldwell</u>
                                            William W. Caldwell
                                            United States District Judge

Date: November 3, 2005

```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :
          Plaintiff             :
                                :
                                :
          v.                    :    CRIMINAL NO. 1:CR-05-278
                                :
                                :
TYRONE JONES,                   :
          Defendants            :
```

O R D E R

AND NOW, this 3rd day of November, 2005, it is ordered that the Defendant's motions to suppress (docs. 27, 35, 46) are denied.

/s/William W. Caldwell
William W. Caldwell
United States District Judge